# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnwest Bank,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Co-op Credit Union of Montevideo,<br><br>　　　　Defendant. | Case No. 19-cv-03041 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Douglas D. Kluver, Kluver Law Office and Mediation Center PLLC, 1319 Grove Avenue, PO Box 486, Montevideo, MN 56265, for Plaintiff.

Timothy P. Tobin, Gislason & Hunter LLP – Minneapolis, 701 Xenia Avenue South, Suite 500, Minneapolis, MN 55416, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

　　　This matter is before the Court on Plaintiff's Motion to Remand to State Court for Lack of Federal Subject Matter Jurisdiction. (Doc. No. 6)  Defendant opposes the motion, arguing that the action was properly removed.  Because the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) (2018), Plaintiff's motion is denied. Moreover, to avoid duplicative and/or inconsistent rulings in this related matter, the Court refers this matter to the United States Bankruptcy Court for the District of Minnesota, to be considered in connection with pending bankruptcy proceedings in *In re Petersen*, No. 19-41922, currently pending before United States Bankruptcy Judge William Fisher.

1

I. **BACKGROUND**

This case involves a dispute between two Minnesota financial institutions over which institution is entitled, based on competing security interests, to $32,500 currently held in trust by Plaintiff, Minnwest Bank of Minnesota ("Minnwest"). Minnwest is a bank incorporated under Minnesota law. (Minnwest Complaint ("Compl.") [Doc. No. 1-1] at ¶ 2; *see also* https://www.minnwestbank.com/about-us/minnwest-locations.html). Defendant Co-op Credit Union of Minnesota ("CCU") is a Minnesota credit union, also organized under Minnesota law. (Compl. at ¶ 3; CCU Answer [Doc. No. 4] at ¶ 2.)

A. **Factual Background**

Minnwest and CCU have both loaned funds to Jonathan Petersen, an individual who raises cattle in southern Minnesota. (*See* Memorandum in Support of Motion to Remand ("Mem. in Supp. Rem") [Doc. No. 8] at 1–2). Additionally, Minnwest has loaned funds to Jonathan Petersen's father, Dennis Petersen (collectively, "the Petersens"). (*See* Memorandum in Opposition to Plaintiff's Motion to Remand ("Mem. in Opp. Rem.") [Doc. No. 12] at 5–6.) The Court briefly reviews the history of the debts at issue here.

1. **March 9, 2018 Minnwest Loan and Security Agreement**

On March 9, 2018, the Petersens jointly borrowed $28,272.50 from Minnwest for purposes of purchasing a tractor. (Minnwest Ex. A Promissory Note [Doc. No. 9] at 1–2.) On the same date, the Petersens also signed an agreement granting Minnwest an interest in certain personal property to secure that loan. (Minnwest Ex. B Agricultural Security Agreement ("March 9, 2018 Security Agreement") [Doc. No. 9].) While a full description

of the language of the March 9, 2018 Security Agreement is not necessary for purposes of this motion, the Court discusses those portions relevant to its consideration.

Minnwest's March 9, 2018 Security Agreement references a "grantor" throughout the document, and defines the term as including both Jonathan and Dennis Petersen. (*Id.* at 1.) It describes the property securing the loan as inclusive of the grantor's "Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Farm Products, Livestock (including all increase and supplies), Crops, Fixtures, and proceeds related to any of the forgoing property." (*Id.*)

The March 9, 2018 Security Agreement also has a "cross-collateralization" clause, which states:

> In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amount may be or hereafter may become otherwise unenforceable.

(*Id*. at 2.) Finally, the March 9, 2018 Security Agreement includes a "Future Advances" clause, stating that "in addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes." (*Id*. at 2.)

3

### 2. CCU Loans and Security Agreement

CCU has also extended several loans to Jonathan Petersen. (*See* Alton Decl. Exs. 1–3 [Doc. No. 13-1].) Relevant here, one of those loans was for $21,000, dated April 2, 2019. (Alton Decl. Ex 1. at 1.) Under the terms of the loan agreement, Jonathan Petersen was to use the money to purchase "40 beef calves weighing 350 [pounds on average]." (*Id.*) This loan was subject to a blanket security agreement that gave CCU an interest in various property owned by Jonathan Petersen, and listed the 40 calves to be purchased as "specific property" securing the debt. (*Id*. at 5.)

### 3. *In re Petersen*, United States Bankruptcy Court for the District of Minnesota

In June 2019, Jonathan Petersen filed for Chapter 12 bankruptcy protection in the United States Bankruptcy Court for the District of Minnesota. *See* Jonathan Petersen Petition for Chapter 12 Bankruptcy, *In re Petersen*, No. 19-41922 (Doc. No. 1) (Bankr. D. Minn. June 26, 2019). In the course of that bankruptcy, Petersen sought permission to use cash collateral derived from the sale of several cattle to (1) buy feed for his remaining cattle; and (2) partially repay debts owed to both Minnwest and CCU. *See* Petersen Motion to Use Cash Collateral, *In re Petersen*, No. 19-41922 (Doc. No. 17) (Bankr. D. Minn. Aug. 28, 2019). Petersen requested that he be allowed to use $42,000 in funds: $32,500 would be distributed between Minnwest and CCU, in such proportion as he understood his relative debt level to each to be, and $9,500 would be used by him to purchase feed and other essentials for his cattle farm. *Id*. (proposing to pay $12,500 to Minnwest and $20,000 to CCU). The Bankruptcy Court permitted the sale and use of the cash proceeds, but ordered

Petersen to transfer the $32,500 at issue to be held in trust by Minnwest, for the sole benefit of both Minnwest and CCU.  Order, *In re Petersen*, No. 19-41922 (Doc. No. 26) (Bankr. D. Minn. Sept. 16, 2019).  However, the Court did not resolve the parties' dispute over how to finally distribute the funds as between Minnwest and CCU.  *Id.*  Rather, it held that the funds could be "disbursed at such time and in such proportion as Minnwest and CCU agree or upon subsequent Order of a court of competent jurisdiction." *Id.* at ¶ 6.

Relevant here, Minnwest also claims it is owed substantial amounts of money from Dennis Petersen individually.  In an October 2019 filing in Jonathan Petersen's bankruptcy case, Minnwest described those debts as comprising $320,010.98 in principal, $26,121.33 in interest, and $4,328.46 in late fees, for a total of $350,460.77.  *See* Minnwest Motion for Relief from Stay, *In re Petersen*, No. 19-41922 (Doc. No. 34) at ¶ 12 (Bankr. D. Minn. Oct. 9, 2019) (describing Dennis Petersen's debts "[a]s of September 27, 2019").  In the same filing, Minnwest asserts that the entirety of that debt is secured by the March 9, 2018 Security Agreement entered into by the Petersens.  *Id.* at ¶ 11 (alleging that the security agreement "also pledged [Jonathan Petersen]'s collateral to secure all obligations, debts, and liabilities owed to the Lender by his co-grantor, Dennis Petersen").

        **B.**    **Procedural History**

The parties never agreed as to how to distribute the $32,500 held in trust.  As a result, Minnwest filed suit in Minnesota state court seeking to have its security interests declared superior to CCU, and requesting an order granting it the right to the entirety of the $32,500.  (*See* Compl. at ¶ 15).  Minnwest claims that Jonathan Petersen owes it a total of $28,272.50, as evidenced by a promissory note, which it characterizes as being secured

5

by a "blanket security interest," an apparent reference to the March 9, 2018 Security Agreement. (*Id.* at ¶¶ 4–5.) In addition, Minnwest alleges that the broad "grantor" provisions in the March 9, 2018 Security Agreement allows it to hold Jonathan Petersen responsible for Dennis Petersen's debts. (*See* Mem. in Opp. Rem. at 1–2.)

CCU, on the other hand, maintains that it is owed $41,709.72 from three loans made to Jonathan Petersen. (Mem. in Opp. Rem. at 5.) CCU asserts a security interest in 40 cattle that were purchased as calves by Petersen using one of these loans. (*Id.*) Much like Minnwest, CCU maintains that its security interest is superior on the grounds that the cattle sold to raise the cash collateral at issue were the same 40 cattle covered by the CCU security agreement. (*See id.* at 2, 5.) As such, CCU also seeks the entirety of the $32,500 held in trust by Minnwest. (CCU Answer at 2.)

After Minnwest filed its complaint in state court, CCU removed the action to this Court pursuant to 28 U.S.C. § 1452(a) (2018) and 28 U.S.C. § 1334(b). (Notice of Removal [Doc. No. 1] at 1.) Minnwest now moves to remand to state court, asserting that this Court lacks federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1447(c). (Pl.'s Mot. to Remand [Doc. No. 6] at 1.) Generally, Minnwest argues that this matter is properly venued in state court because it simply involves a dispute over lien priority, which should be resolved purely under Minnesota law. (*See* Mem. in Supp. Rem. at 5–8.) Minnwest posits that the funds in dispute are fully outside of Jonathan Petersen's bankruptcy estate and that, accordingly, this Court lacks "related to" federal subject matter jurisdiction. (*See id.*)

In response, CCU argues that as a general matter, a proceeding to determine lien priority stemming from a bankruptcy case is a "core" bankruptcy proceeding. (*Id.* at 11–15.) But even if this case is not a "core proceeding," CCU contends, this Court still has "related to" bankruptcy jurisdiction because a finding for either party would necessarily have an effect on the ongoing Petersen bankruptcy by altering either party's claim against the estate. (*Id.* at 15–18.)

After Minnwest's motion was filed and fully briefed before this Court, both parties in this case were named as defendants in an adversary complaint filed by Jonathan Petersen in his bankruptcy case. *See* Complaint, *Petersen v. Minnwest Bank* (*In re Petersen*), No. 19-41922 (Doc. No. 80) (Bankr. D. Minn. Apr. 30, 2020). In that proceeding, Petersen specifically disputes whether the March 9, 2018 Security Agreement renders him liable for the personal debts of his father. *Id.* at ¶¶ 9–19. He also specifically discusses the $32,500 in dispute in this lawsuit, and argues that "an actual controversy has arisen and now exists between [himself], [CCU], and Minnwest as to the validity, priority, and extent of Minnwest's purported liens on [his] assets." *Id.* at ¶ 44; *Id.* at ¶¶ 29–45. In part, Petersen asks the Bankruptcy Court to determine the "validity, priority, and extent of" the security interests claimed by Minnwest in his property because doing so is "necessary to the proper administration of" his bankruptcy estate. *Id.* at ¶ 45.

## II. DISCUSSION

### A. Standard of Review

Minnwest's motion to remand presents one issue: whether this Court has federal subject matter jurisdiction over this case. The party who removed the case to federal

court—here, CCU—bears the burden of establishing federal subject matter jurisdiction. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). The Court must resolve any doubt as to whether removal is proper in favor of remand. *See Arnold Crossroads, LLC v. Gander Mountain Co.*, 751 F.3d 935, 940 (8th Cir. 2014) (citing *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993)); *see also Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (requiring the Court to resolve doubts about jurisdiction in favor of remand). The Court must evaluate the issue of remand in light of Plaintiff's "well-pleaded complaint." *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 808 (1986).

Federal courts have original, although non-exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Civil proceedings in a bankruptcy case are divided into two categories: core proceedings and non-core, or "related to," proceedings. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995).

"Core proceedings are those cases 'arising under title 11, or arising in a case under title 11 . . . [while] [n]on-core 'related to' proceedings [are those that] 'could conceivably have an[] effect on the estate being administered in bankruptcy . . . .'" *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1017 (8th Cir. 2009) (quoting *Specialty Mills, Inc.*, 51 F.3d at 774). While not explicitly defined by statute, Congress has set forth a non-exhaustive list of "core proceedings," including "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K) (2018). Importantly, however, this type of "core proceeding" is limited to actions that seek to "determine the validity, extent, or priority of

8

liens *against property of the bankruptcy estate . . . .*" *In re Holmes*, 387 B.R. 591, 598 (Bankr. D. Minn. 2008) (citing *In re B.J. McAdams, Inc.*, 66 F.3d 931, 936 (8th Cir. 1995)) (emphasis in original). A dispute over property not in a bankruptcy estate cannot constitute a core proceeding. *See id.* at 599 ("[A]n action to determine the validity of a lien against property allowed as exempt [from the bankruptcy estate], in which non-bankruptcy law is invoked for substantive governance, is not a core proceeding."); *see also Abramowitz v. Palmer*, 999 F.2d 1274 1276–77 (8th Cir. 1993) (concluding that proceeding to determine validity of lien on Missouri home that was exempted by the debtor from the bankruptcy estate was not a core proceeding).

Not every matter enumerated in 28 U.S.C. § 157(b)(2) is a "core proceeding." As the Eighth Circuit has observed, if all enumerated proceedings were always viewed as "core proceedings," few legal disputes would exist outside the remit of federal bankruptcy jurisdiction. *See In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir. 1988) (noting that "[c]ourts have cautioned against broad interpretation of [§ 157(b)(2)] catchall provisions"). Accordingly, the Eighth Circuit has cautioned that core proceedings are defined "by their nature, not their particular factual circumstance." *In re Farmland Indus., Inc.,* 567 F.3d 1010, 1018 (8th Cir. 2009). The Eighth Circuit limits core status to those proceedings that either "involve a cause of action created or determined by a statutory provision of title 11," or that "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 1018 (citations omitted) (internal quotation marks omitted).

"Non-core proceedings," by contrast, consist of matters that are "related to" a bankruptcy case. A proceeding is "related to" a Title 11 case, for purposes of jurisdiction, if the outcome could "conceivably have any effect" on the bankruptcy estate. *In re AFY, Inc.*, 902 F.3d 884, 888 (8th Cir. 2018) (quoting *Specialty Mills*, 51 F.3d at 774). Such an effect arises when a case's disposition "could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." *Cutcliff v. Reuter*, 791 F.3d 875, 881–82 (8th Cir. 2015) (quoting *Specialty Mills, Inc.*, 51 F.3d at 774). The test is broad. "[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets [the test]" of being related. *Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013) (quoting *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988)).

### B. "Related To" Jurisdiction

At the very least, this case is unquestionably "related to" Jonathan Petersen's bankruptcy proceeding.[1] As noted above, a matter is "related to" a bankruptcy case if the outcome of that matter could have "any conceivable effect" on a bankruptcy estate and proceeding. *In re AFY, Inc.,* 902 F.3d at 888. Here, there is no doubt that the resolution of Minnwest's claims could conceivably affect Jonathan Petersen's bankruptcy estate and proceedings for several reasons.

---

[1] This case may also be a "core proceeding" under bankruptcy law. In light of the Court's intention to refer this matter to bankruptcy court, *see infra*, it need not determine its status in this Order, but instead will leave that to the expertise of the bankruptcy court.

10

First, any ruling in Minnwest's favor—accompanied by an award of all, or some, of the $32,500 it currently holds in trust—alters the amount of money that CCU would subsequently seek from the Jonathan Petersen bankruptcy estate.  Likewise, if the case resolves in favor of CCU—in full or in part—Jonathan Petersen's debt to Minnwest would not be eliminated, resulting in Minnwest seeking additional funds from Jonathan Petersen's bankruptcy estate.  Put simply, either outcome plainly crosses the low "related to" jurisdictional bar because either outcome could conceivably have an impact, "in any way . . . upon the handling and administration of [Jonathan Petersen's] bankruptcy estate." *Cutcliff v. Reuter*, 791 F.3d 875, 881–82 (8th Cir. 2015).

Second, and perhaps more significantly, it appears that in resolving the merits of this dispute, the Court would have to determine the extent to which Jonathan Petersen is responsible for the debts of his father, Dennis Petersen—an issue that will certainly impact Jonathan Petersen's bankruptcy estate and proceeding.  Minnwest's complaint seeks *all* of the $32,500 at issue.  (Minnwest Compl. at 6.)  However, Minnwest also indicates that Jonathan Petersen personally owes only $28,722.50.  (Minnwest Compl. at ¶ 4.) Accordingly, it appears that Minnwest is necessarily claiming that Jonathan Petersen is liable, in some manner, for the debts of his father.  Any ruling in favor of Minnwest on the merits would therefore require a determination of the extent of Minnwest's security interest in Jonathan Petersen's property based on his potential liability for the debts of his father, Dennis Petersen. Yet that issue is squarely before the Bankruptcy Court in Jonathan Petersen's bankruptcy proceeding. *See* Complaint, *Petersen v. Minnwest Bank* (*In re Petersen*), No. 19-41922 (Doc. No. 80) (Bankr. D. Minn. Apr. 30, 2020). The potential for

11

successive, duplicative, or even divergent rulings between this Court and the Bankruptcy Court on the same issue only further demonstrates that Minnwest's suit is "related to" the Petersen bankruptcy.

In sum, the Court holds that it has subject matter jurisdiction because Minnwest's suit is, at the very least, a "related-to" bankruptcy proceeding. As such, Minnwest's Motion to Remand is denied.

### C. Defendant's Request for Referral to the Bankruptcy Court

CCU asks the Court to refer this case to the Bankruptcy Court. (Mem. In Opp. Rem. at 18). Defendant explains that, "based on its understanding" of federal law and the local bankruptcy rules, it believes that referral to the Bankruptcy Court would come as a matter of course in the event of removal. (*Id.*) Plaintiff appears to agree that the bankruptcy court *could* be the proper venue, but only in the event this case was found to be a "core proceeding." (*See* Mem. in Supp. Rem. at 8 ("If this matter is indeed a core issue to the bankruptcy action as CCU suggests, the proper removal would have been to the very bankruptcy court that sent it away."))

The Court finds that referral is warranted. Under Rule 1070–1 of the District of Minnesota's Local Rules of Bankruptcy Procedure, "[a]ll bankruptcy cases and proceedings, *including any claim or cause of action that is removed* under 28 U.S.C. § 1452 or Federal Rule of Bankruptcy Procedure 9027, *are* referred to the bankruptcy judges and shall be assigned among them according to orders made by them." Bankr. D. Minn. R. 1070–1 (emphasis added). "In this District, all bankruptcy cases and proceedings are automatically referred to the bankruptcy judges." *Kelley v. Opportunity Fin., LLC*, No.

CV. 14-cv-3375 (MJD), 2015 WL 321536, at *1 (D. Minn. Jan. 26, 2015) (citing Local Bankruptcy Rule 1070–1). The language of Rule 1070–1 plainly directs referral, even for "related to" proceedings. *See Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, 14-cv-4786 (DWF/FLN), 2015 WL 12540194, at *4 (D. Minn. July 2, 2015) (discussing Bankr. D. Minn. R. 1070–1 and noting that referral is appropriate for "related to" proceedings). Accordingly, the Court hereby refers this matter to the United States Bankruptcy Court for the District of Minnesota, to be considered in connection with pending bankruptcy proceedings in *In re Petersen*, Doc. 19-41922, currently pending before United States Bankruptcy Judge William Fisher.

### III.   CONCLUSION

Based on the submission and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Minnwest Bank's Motion to Remand [Doc. No. 6] is **DENIED**. Moreover, the Court hereby refers this matter to the United States Bankruptcy Court for the District of Minnesota, to be considered in connection with pending bankruptcy proceedings in *In re Petersen*, Doc. 19-41922, currently pending before United States Bankruptcy Judge William Fisher.

**IT IS SO ORDERED.**


Dated: July 1, 2020                                     s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge